UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
CENTRAL ISLIP DIVISION

| | |
|---|---|
| IN RE: HILARY STREET, | Case No. 8-09-78070-reg |
| Debtor. | Chapter 7 |
| FIRST NATIONAL BANK OF OMAHA, | **COMPLAINT SEEKING EXCEPTION TO DISCHARGE PURSUANT TO 11 U.S.C. §523(a)(2)(A)** |
| Plaintiff, | |
| v. | |
| HILARY STREET, | A.P. No. 8-10-_____ |
| Defendant. | Hon. Robert E. Grossman |

The Plaintiff, First National Bank of Omaha, by its attorney, Robert S. Cooper, Esq., for its Complaint against the Defendant, alleges as follows:

1. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §1334 and §157, and this matter is a core proceeding pursuant to 28 U.S.C. §157.

2. The Debtor filed a Petition, and an Order for Relief was entered under 11 U.S.C. Chapter 7 on October 25, 2009.

3. At all times mentioned herein, the Defendant, Hilary Street, had possession of a First National Bank of Omaha credit account, number xxxx-xxxx-xxxx-2070.

4. On February 15, 2009, the account was in good standing and the balance on the abovementioned account was zero.

5. Between February 16, 2009 and July 7, 2009, the Defendant made purchases on this account totaling $10,609.03.  See copies of

1

account statements, attached hereto and incorporated herein, marked Exhibit A.

6. The Defendant's charges set forth in Exhibit A, included but were not limited to: charges at Waldbaum's totaling $1,802.03; charges at Petro Inc. totaling $1,446.30; charges at CBV Cablevision totaling $1,100.88; and charges at Verizon totaling $942.51. See copies of account statements, attached hereto and incorporated herein, marked Exhibit A.

7. On October 5, 2009, the Debtor obtained a Certificate of Counseling in furtherance of Sections 109(h) and 111 of the Bankruptcy Code.

8. On October 25, 2009, the Debtor's Chapter 7 bankruptcy was actually filed with the Court.

9. Although required by the Official Bankruptcy Forms, the Debtor failed to list in her sworn Schedule F, the consideration received for any of her unsecured debts, except for the words "Revolving account", which she set forth for each unsecured debt therein.

10. Therefore, regarding the information referred to in the above paragraph, the Debtor either intentionally concealed from or inadvertently failed to disclose such information to the Court, the U.S. Trustee, the Trustee, and her creditors, or the Debtor failed to maintain her financial records and does not have such information available to include in her sworn Schedules.

11. Although required by the Official Bankruptcy Forms, the Debtor failed to list in response to Question No. 9 on the Debtor's

sworn Statement of Financial Affairs, the date(s) of her payment(s) to her bankruptcy attorney, yet her attorney's Rule 2016(b) Statement indicates that she did in fact pay $1,500.00 towards her bankruptcy legal fees and/or bankruptcy filing fee.

12. Therefore, regarding the information referred to in the above paragraph, the Debtor either intentionally concealed from or inadvertently failed to disclose such information to the Court, the U.S. Trustee, the Trustee, and her creditors, or the Debtor made no effort to obtain such information from her bankruptcy attorney to include in her sworn Statement of Financial Affairs.

13. Pursuant to the Debtor's sworn Statement of Financial Affairs, in the year prior to and up through the Debtor's bankruptcy filing, the Debtor did not transfer any property other than in the ordinary course of the Debtor's financial affairs.

14. Pursuant to the Debtor's sworn Statement of Financial Affairs, in the year prior to and up through the Debtor's bankruptcy filing, the Debtor did not suffer any losses from fire, theft, or gambling.

15. Pursuant to the Debtor's sworn Statement of Financial Affairs, in the year prior to and up through the Debtor's bankruptcy filing, the Debtor did not have any property repossessed, sold at foreclosure, or transferred through a deed in lieu of foreclosure.

16. Pursuant to the Debtor's sworn Statement of Financial Affairs, the Debtor resided at the same address and did not move within the three years prior to filing bankruptcy.

17. Pursuant to the Debtor's sworn Schedule I, at the time of the bankruptcy filing, the Debtor was employed by QDOBA Restaurant Corp.

18. Pursuant to the Debtor's sworn Schedule I, the Debtor's monthly net income was approximately $2,438.17.

19. Pursuant to the Debtor's sworn Schedule I, there are no increases or decreases in income anticipated to occur within the year following the Debtor's bankruptcy filing.

20. Pursuant to the Debtor's sworn Schedule J, the Debtor's average monthly living expenses were approximately $4,861.71.

21. Pursuant to the Debtor's sworn Schedule J, there are no increases or decreases in expenses anticipated to occur within the year following the Debtor's bankruptcy filing.

22. The minimum monthly payments on the Debtor's $89,398.00 of unsecured debt (based upon minimum monthly payments estimated at between 2% and 3% of the outstanding principal balances on her total unsecured debt) were between $1,700.00 and $2,700.00 each month.

23. Given the Debtor's monthly net income, monthly living expenses, and circumstances as set forth in her sworn Schedules and sworn Statement of Financial Affairs, at the time the Defendant incurred the abovementioned $10,609.03 in charges on this account, the Debtor had no monthly disposable income from which to pay even the minimum monthly payments on her unsecured debt.

24. When the Defendant accepted and opened this credit account with the Plaintiff, she agreed to abide by the terms set forth in the account agreement.

4

25. The Defendant's use of this account was governed by the terms of the account agreement.

26. At the time the Defendant incurred the abovementioned $10,609.03 in charges on this account, the Defendant represented that she had the intention to repay said debt to the Plaintiff pursuant to the terms of the account agreement.

27. At the time the Defendant incurred the abovementioned $10,609.03 in charges on this account, the Defendant represented that she agreed to abide by the terms of the account agreement.

28. The dates when and the places where the Defendant made the abovementioned representations, are listed in the account statements marked Exhibit A, and attached hereto.

29. The Plaintiff relied upon the Defendant's representations of intent to repay the Plaintiff pursuant to the terms of the account agreement and representations of agreement to abide by the terms of the account agreement in allowing the Defendant to use this account and incur the charges between February 16, 2009 and July 7, 2009, as set forth in Exhibit A, attached hereto.

30. The Defendant did not advise the Plaintiff that she would be unable to honor the above representations or that she would be unable to abide by the terms of the account agreement at the time that she made the representations and made the charges set forth in Exhibit A, attached hereto.

31. The Plaintiff was justified in its reliance upon the Defendant's representations of intent to repay the Plaintiff pursuant to the terms of the account agreement and representations of agreement to abide by the terms of the account agreement.

32. The Defendant incurred the abovementioned $10,609.03 in charges on the Plaintiff's account at a time when the Defendant was unable to meet her existing financial obligations as they became due.

33. Based upon all of the above, at the time the Defendant incurred the abovementioned $10,609.03 in charges, the Defendant intended to deceive the Plaintiff in that she either had no intention to repay said debt to the Plaintiff pursuant to the terms of the account agreement or the Defendant knew or should have known that she had no ability to repay said debt to the Plaintiff pursuant to the terms of the account agreement.

34. Based upon all of the above, at the time the Defendant incurred the abovementioned $10,609.03 in charges, the Defendant intended to deceive the Plaintiff in that she made such representations of intent to repay the Plaintiff pursuant to the terms of the account agreement and representations of agreement to abide by the terms of the account agreement with a reckless disregard as to the truthfulness of said representations.

35. Therefore, the Defendant obtained said money from the Plaintiff by false pretenses, false representation, or actual fraud, and at the time of filing, the debt owed to the Plaintiff was in the amount of $11,594.93, and for the above reasons, this indebtedness to Plaintiff, First National Bank of Omaha, is nondischargeable in bankruptcy pursuant to 11 U.S.C. §523(a)(2)(A).

**WHEREFORE,** Plaintiff, First National Bank of Omaha, respectfully prays that this Court:

A. Determine that the Defendant's indebtedness to the Plaintiff is an exception to discharge pursuant to 11 U.S.C. §523(a)(2)(A),

B. Grant judgment to the Plaintiff, First National Bank of Omaha, against the Defendant, Hilary Street, in the amount of $11,594.93, plus the $250.00 Adversary Proceeding filing fee, for a total of $11,844.93, plus interest from the date of the bankruptcy filing, plus the Plaintiff's attorney's fees, other costs, and disbursements incurred for the collection of this debt and of this action as permitted by applicable law, and

C. Grant the Plaintiff such other and further relief as to this Court seems just and proper.

Dated: January 19, 2010

/s/ Robert S. Cooper
ROBERT S. COOPER, ESQ., RC0986
Attorney for Plaintiff
Office and Post Office Address
1425 Jefferson Road
Rochester, New York 14623
Telephone: 585-292-1920
Facsimile: 585-292-1925
Email: RCOOPERESQ@aol.com